Good morning, everyone. Can you all hear me? Yes. All right, can the clerk call our 1st case of the day? 325-0578 J.P. Morgan Acquisition Corporation, Eppley and Linear Mortgage, LLC, Eppley v. James B. Bell, Appellant. Thank you. Mr. Bell, if you're ready to proceed. Mr. Bell, you are muted right now. That's okay. We'll work our way through this. Okay, I think I've corrected that. All right. I can hear you just fine now. Mr. Bell, before we get started, I just wanted to let you know, you would file the motion to exclude certain parties, J.P. Morgan, from this appeal, which we denied. I just wanted to make sure that you were clear about that, and they will be allowed an opportunity to argue in the case. Were you aware of that, Mr. Bell? Yes, I am. Okay. And the other thing I wanted before you got started, this is your opportunity to talk about the arguments that you've made in your briefs, but I had a question before you get started, and that is, I'm looking at both of the documents, I call them 83 and 56, but they were the 2 copies of mortgage that had been recorded. Yes, sir. You're certainly familiar with those. The difference that I can see, and I believe you acknowledge this, but that's what I wanted to ask you is, the only difference in the two is that they removed your waiver of homestead rights, which had been written in. Is that correct? That is correct. Okay. All right. That was the question I had, and you're welcome to tell us what you would like about your brief and your case. Okay. Again, good morning. I am James Bell, the appellant in this matter. And first off, initially, I'd like to thank this esteemed panel for allowing me to appear before you. As you know, this case has been before the court before. I will refer to the opinion issued by this court on July 1st, 2020, as Bill 1. This appeal presents a record that reveals many reversible errors committed by the circuit court. Many of those errors bear out the jurisdiction of the circuit court, as well as its lack of jurisdiction. First, there is the order of summary that is based on plaintiff's motion filed after remand. Mr. Bell, can I interrupt you for one second? Yes, sir. For some reason, your broadcast, your Zoom portion is lagging a little bit. We're going to try to continue on and see if that happens again. So, just go ahead. I think we're hearing everything that you're saying. It's just lagging sometimes. I'm not sure, but as a technical matter, would it be better if I cut my video off? I think the video takes up a great deal of the bandwidth. I'm going to ask my panel mates, is that okay? That's fine. That's fine, Mr. Bell. Justice Bertani? No objection. Okay. I assume that there's no objection from the other attorneys. Okay. Or from the attorneys. Okay. Yeah, I think that'll help us, Mr. Bell. Go ahead. Okay. Thank you. First, there's an order of summary judgment that's based on the plaintiff's motion filed after remand. And Bell 1, and I'm referring to the first case, or the first appeal is Bell 1. This court stated that summary judgment is not proper for either party at this stage of the proceedings since undisputed testimony about the business records from the original lender or the undisputed business records of the original lender themselves are not a part of this record. Therefore, we hold the contradictory factual inferences arising from these documents embody the disputed material facts to make resolution by summary judgment in favor of either party unwarranted. Plaintiff's motion for summary judgment filed after the opinion mandate in Bell 1 contained no undisputed testimony about the business records from the original lender or the undisputed testimony, I'm sorry, undisputed business records of the original lender themselves. Neither resume or mirrors are mentioned or is mentioned in plaintiff's motion and exhibits. Plaintiff's post-mandate motion for summary judgment wasn't as essentially the same motion that produced the order that this court reversed in Bell 1. It still relies primarily on the altered mortgage agreement and the certificate of error. Plaintiff's motion and plaintiff's motion pleadings and affidavit included the following items that were not a part of the pre-Bell 1 motion for summary judgment. The false affidavit of Mr. Jason Crawford, an extended record of the payment history from J.P. Mortgage Chase. The original lender was resume and mirrors acting as their nominee was the original mortgagee. A prior 2005 mortgage agreement, a partial copy of a settlement statement from one of the two closings attempted in May of 2006. The signature page on that is missing. A side notice of right to cancel that my wife and I acknowledge receipt of. On the other hand, defendant's response to plaintiff's motion for summary judgment included the following. A true copy of the mortgage agreement dated May 25, 2006 with no markings on his face except for the quote exhibit one end of quote marking a fix for identification. A copy of the note signed solely by my wife. An unaltered copy of the true mortgage agreement bearing the recorder's document number ending in 095856. A copy of the only assignment for mirrors to J.P. Morgan Acquisition Corporation and a copy of the altered mortgage agreement that is attached to petition to plaintiff's complaint and bearing the recorder's document number ending in 145083. And back in reference to the question, Mr. Justice, that one change radically, in my opinion, radically changed my posture to this relationship, this mortgage agreement. Basically, it removed all the incentives that I had and all the impetus that I had to sign the agreement. If you couple that with, I think it's paragraph 13 of the mortgage agreement, all right, there is a connection between that handwritten term and that portion of the written mortgage agreement. These documents and the untruthful affidavit of Mr. Crawford do not change or reduce the importance of the divergent inferences previously drawn from the facts made by reasonable people, namely the judges of the circuit court and the justices of this court. The moving party for summary judgment must affirmatively show a clear legal right thereto free from doubt. If any facts upon which reasonable persons may disagree are identified or inferences may be fairly drawn from those facts, leading to differing conclusions, the circuit court must deny the motion and direct the of these facts and inferences be made at trial. At this stage of these proceedings, one circuit court judge, Judge Lund, and this honorable court have found that there exists a genuine issue of material fact embedded in the facts of this case. Judge Rickman and Judge Jaris have disagreed and wrote that there are no such facts or diverging inferences that can be drawn by reasonable persons. The circuit courts, in my opinion, again, I'm sorry, in determining whether a genuine issue of material fact exists, the court must construe the evidence strictly against the movement and liberally in favor of the opponent. In my opinion, this court's most recent order of summary judgment issued by Judge Jaris is clearly reversible error. There's one additional fact that is excruciatingly important regarding this altered and forged document attached to plaintiff's false complaint. If this court finds that, as I think it should, the document attached to plaintiff's complaint is an altered copy of the original mortgage agreement, the plaintiff has failed to produce a signed copy of the agreement upon which it is based in this case. This fact and the complaint upon which it's based once filed was a violation of the Illinois statute of fraud, 740 ILCS 80 forward slash 1 and 2. Neither defendant or his wife signed the altered document. These facts also squarely impact the issue of what the plaintiff had standing from the inception of the case. As I said before, this court pointed out that there may not be any interest that the plaintiff had in document number ending in 145083 to be assigned by J.P. Morgan Chase acting as the agent for J.P. Morgan acquisition. Mr. Bell, may I ask a question, please, sir? You said that the issue on standing is because you said it's as a result of you and your wife not signing this document, correct? That's your issue on standing? You say on page two of your brief that the issues are the plaintiff lacked standing was one of the issues? Yes. Okay. And that is based upon what that there was no signature of you and your wife on this document? What I'm suggesting is that what I'm referring to as the altered document was a copy that had through the limiting handwritten term that I was signing solely for purposes of waiving homestead. That one thing changed, in my estimation, changed the agreement. That is, we did not sign that agree or that altered copy with that term deleted. I don't know if I'm answering your question or. When you said in your pleading in your brief that the plaintiff left standing, tell me what you thought, what you think that they left standing. How did you come to that conclusion, sir? I came to the conclusion this way. From the beginning of the case, from the case's inception, what was used and attached to plaintiff's complaint was a copy of the original mortgage agreement that was altered where that hand written term was scratched out. We didn't sign that document in that form. What we signed was a unaltered version or the unaltered original. That's one issue. The second issue is basically, I was attended by the entirety. Given the, how can I put this, given the nature of the original unaltered mortgage agreement, my connection or relationship to the agreement was limited. The mortgage agreement itself, I think paragraph 13 states very clearly that I was not responsible for the payment of the note as a person who signed the mortgage and not the note. The payment of the note was the responsibility of my wife solely. Those were the terms which we agreed to. And the most peculiar thing about this, I don't even know if I should say this, but it was the insistence by the mortgage company that this document be submitted or signed in this fashion with the handwritten term included. Mr. Bell, if I can try to sum up what I believe your argument is, just so I know that I'm on the same wavelength, so to speak, that I understand your argument. You signed first the document at closing. Someone said, hey, you need to waive your homestead rights. They hand wrote it in, you signed it, and then all of a sudden later on, a document appears, the mortgage comes back, with those terms stricken. Correct? That's what happened in your mind, correct? No. What occurred was this. After the kerfuffle with the dates and everything, we appeared on the second day, at the second closing. Even prior to that, I was told that I could not be on the note and I could not sign the mortgage. I'm sorry. I'm having trouble because everything is breaking up. The audio is breaking up sometimes. I was told that I could not be on the note basically because of my credit score. My wife's credit score was better and the interest rate would be lower if I was not on the note. When we got to the closing, as we were going, I believe the resume representative indicated that I needed to add that portion of the handwritten term to the mortgage agreement. They wrote it in. I asked, why was that so? They explained that this makes clear that you are not a part of the agreement or the note. That's what I was told. It also makes clear the connection between the handwritten term and the written term of the mortgage agreement. I think it's paragraph 13. Yeah. That's exactly what I thought. Then, document ending in 56, mortgage ending in 56, shows up and those terms are stricken. The only time that that document showed up with those terms stricken was when I was served with a copy of the complaint. I never saw that document until I got a copy of the complaint. That was four years after. I thought you were arguing because it showed up with those terms stricken, you were therefore relieved of your obligations under the mortgage. I thought that was your argument. Was I incorrect? No, that is not my argument. I'm saying that they did not have standing to sue me on the basis of the altered document. Why? I'm still not sure if I'm answering your question. Maybe I don't understand your question. No, you are answering my question. You said they don't have standing based on the altered document. Why would they not have standing? Because I never signed that document and it wasn't a true copy of what I signed. Well, I'm assuming that you did sign it, but it was altered as you suggest. Yes, it was. It was altered after I signed. Yes, I don't think anybody's going to argue with that. Not to my knowledge. I never received it. Yes. Okay. And then that leads to the last question again. How does that alter their standing? I don't believe they have any interest whatsoever in the second mortgage agreement or the second altered mortgage agreement. I don't believe that the altered copy could convey to them or does not have inherently any interest that could be attached to the note. This is important in my estimation, basically because of the agreement. And I apologize for repeating myself. Let me cut you off there then, Mr. Bell. I don't want you to repeat yourself. You're going to have five minutes to respond to their arguments. So you can take that time to to think about what you were just going to say and to respond to what the two attorneys here, Ms. Schifrin and Mr. Larson, have to say. But I'm going to ask my panel mates if you have any questions before that. No questions, Justice Heddle. I have one. I mean, my understanding, sir, is that this is Matt Bertani, by the way. Sir, I understand that you say that the alteration that occurred on the document ending in 5083 dated August 29th as opposed to the prior one dated May 25th. You say that that altered your responsibility on the note? Well, I did not have any responsibility on the note, sir. Did you mean mortgage, Justice Bertani? No, I did not. Okay. So what did that change for you? I'm striking it. What it changed was... I'm sorry. Maybe I'm not a... Well, the complaint says that the only person responsible for any deficiency is your wife. What it changed... No. Oh, yes. Yes, I'm assuming that complaint says that. And how did the second mortgage recording with the handwritten language stricken alter your responsibility in any way, shape, or form? It altered it in this sense. It weakened the term, in my estimation. It weakened the clarity of the term contained in paragraph 13 of the original mortgage agreement. Those changes are handwritten. I'm sorry. Okay. Thank you, Mr. Bell. I think you've answered Justice Bertani's question. And I'm going to turn it over to the other side now. Ms. Schifrin, I believe you are first. Yes, thank you. May it please the court. My name is Shaina Schifrin. I represent the appellee and third-party defendant, J.P. Morgan Mortgage Acquisition Corp. We are only here related to some third-party claims that were asserted against our client. We filed a motion to dismiss that was granted on the basis of the time bar. We believe that motion to dismiss was correctly determined and that the claims are time barred against our client. Mr. Bell did not file a written response to our motion to dismiss. And therefore, we believe any response is really waived at this point. On page 45 of his opening brief, for the first time, he articulated an attempt to respond to the time bar by raising the relation back doctrine. However, he did not how the relation back doctrine would save his claims, how they would get around the time bar. He did not refer to which pleadings he was relating back to and which occasion or transactions he was trying to relate back to. And therefore, he continued to waive any response to the time bar. And so, again, today, I would just reiterate that we believe these claims are time barred. The mortgage was originated in 2010. It is a recorded document. The controversial, we'll call it, Certificate of Error and Satisfaction of Mortgage were also recorded documents that have been a matter of public record since 2006. The foreclosure was then and at that time was substituted out of the case completely. In 2021, for the first time, did Mr. Bell raise any claims against J.P. Morgan Mortgage Acquisition Corp, asserting certain claims related to the filing of the foreclosure, which, again, was a public proceeding, which he was a party to, and also a matter of public record. We believe these claims were properly dismissed based on the time bar. And even if they were not, we believe that Mr. Bell could not state any of these claims. My client, J.P. Morgan, did not originate the loan documents, had nothing to do with the Satisfaction of Mortgage or Certificate of Error, and, again, has not had an interest in the property since 2016. I have nothing further unless the panel has any questions since I'm essentially arguing against myself since Mr. Bell has not really raised these arguments. Sure, friend. The only question I have is, is there anything in the record that would answer or enlighten the mystery of the striking of the homestead rights? And, in particular, there appears to be an initial by that. Anything appear in the record that explains that? Not that I have seen. And, again, I'll just note that we were not a party to the actual execution of those documents. That goes back to Resume, which was the originator of the loan. We were only assigned the loan four years later in 2010 to execute the foreclosure. And so the file that we have would have been passed along from Resume and then would have then been passed on to the next assignee, which was Bayview. So we don't have access to anything. And, of course, that's why the time bar exists, right? Because information and documents get lost as these years pass. Yes, under our current system of charting paper, they do. Thank you, Ms. Schiffer. I don't have any other questions. No questions. All right. Mr. Larson, if you're ready to proceed. If it pleases the Court, James Larson, appearing on behalf of Linear Mortgage. I would like to inform the Court this morning that I have been in communication with Mr. Noonan, who is responsible for the bulk of the argument that was going to be made today. He is reporting, and perhaps you saw me typing on the side here, trying to get a hold of Mr. Noonan. I've been in communications with him and also been communicating via chat with the Court Clerk. He is in the waiting room, hoping that you will allow him to join this session. I can just report to the Court that when I attempted to join the meeting using the meeting ID and password, I had a problem getting in as well and had to resort to the meeting. Let me stop you right there, Mr. Larson. Crystal, if you can get the other attorney in, go ahead and put him in. I will. Thank you. And, Mr. Larson, you can use this time yourself if you have anything you want to add, or was the attorney the one that was going to do the argument? I'm on, Judge. Jim Noonan. All right. Mr. Noonan, just one second. We'll let Mr. Larson finish his answer. Did you have something you wanted to add before we turn it over to Mr. Noonan? Mr. Larson? The only thing that I guess that I would say is that I'm happy to stand on the brief that was submitted to the Court. Mr. Bell alluded to the prior decision. I think he referred to it as the L1 case. I believe that our appellate brief adequately addresses the substance of that ruling and our position relative to what was previously determined. So, unless any of you have any questions regarding that, I'll cede my time to Mr. Noonan. One question, the same one I asked Ms. Schifrin. Do you have any knowledge as to how the second recorded mortgage came about striking the homestead rights? In all candor, I could only speculate as to what transpired. If you want my opinion, I can tell you, but I don't think that's what you're looking for. No, something in the record. And if there's none, we'll go from there and turn it over to Mr. Noonan. How much time do we have left, Crystal? Mr. Noonan will get nine minutes. Okay. Mr. Noonan? Yeah, Justice, may it please the court. And first, I want to apologize to the justices, the clerk and counsel, or Mr. Bell, for this technical difficulty. My apologies, sincere apologies. I'll address some of the main points, but like Mr. Larson said, we believe that all of the salient points governing this appeal were set forth and addressed in the briefs. But I would like to, I think the key issue that Mr. Bell is advocating here is that the underlying summary judgment was improperly granted. And we contend that the record amply demonstrates that there are no genuine issues of material fact as to the key and material issues supporting the motion for summary judgment. We have submitted the affidavit of the current holder of the indebtedness, and that is a linear mortgage. My client who has in possession of the original note endorsed in blank, which Illinois law is very clear, gives the holder of that instrument standing to prosecute a foreclosure action. So I think on the issue of standing, I think that's resolved by the affidavit of Mr. Crawford submitted that's in the record. And I will also add that Mr. Bell, in response to the motion for summary judgment and the Crawford affidavit, did not submit a counter affidavit rebutting any of the material allegations of that affidavit. So for purposes of summary judgment, the vermin set forth in the affidavit are deemed to be true and that would include the affirmance that the mortgage and note attached to the complaint and set forth attached to the affidavit were true and correct copies of the relevant instruments here, the mortgage and the note. With respect to Mr. Bell's contention, and I think your justice posed the question about how or what, is there any explanation in the record for why the Homestead right section is crossed out in the mortgage? I agree with Mr. Larson. I don't think there's anything in the record that tells us why, but as far as whether the document was altered or a counterfeit, as Mr. Bell contends on appeal, again, he submitted no counter affidavit averring to that fact. And more importantly, in order to resolve questions of fact at the trial court level, he was presented with a request to admit facts, which he did not respond to. So one of those facts was whether or not the mortgage and notes were the original true and accurate copies. And your request to admit facts, Mr. Noonan, was granted? That's correct. Yes. Well, let me rephrase. The request to admit facts, we contend was granted by operation law by his failure to answer them. We did not obtain a court finding of that the request should be admitted. It's our contention by operational law, the failure to deny deems them admitted. Did you include in your summary judgment motion? The request, the, no, no, we didn't. No, we didn't. We rested on the affidavit of Mr. Crawford, which basically mirrored the same facts that are set forth in the request. So you're asking us to it as true that you didn't present it in the trial court, I guess is my point here. If you didn't, I understand that by operation of law, not responding within a certain amount of time causes it to be admitted, but you didn't bring that up before the trial court. Is that correct? That's correct. Okay. Yeah. So do you think that we can consider it then? Well, it's part of the record and on a, you know, the summary judgment is, as you know, it's on a day over review. So I think the admissions of, of emissions of record on summary judgment are sufficient to support, you know, affirmance of a summary judgment motion. Go ahead. Sorry. No, I'm just saying, go ahead. Yeah. I think some people would agree with you and some would disagree with you, but go ahead. Yeah. Mr. Bell's contention that regarding the release and satisfaction of mortgage. Again, I think that was amply set forth in the motion for summary judgment. We the, the Afian, Mr. Crawford appeared and explained what happened. More importantly, there was no the, the there was no evidence, no counter affidavits submitted that the note, the note was ever satisfied, which under Illinois law would be the only way to make release of mortgage effective between the mortgage or in the mortgagee. And then more importantly, we have the certificate of error that corrected that that mortgage release. So again, and that, and the, and the authenticity of that document has also never been rebutted by Mr. Bell. Mr. Bell's content, late, late 11th hour contention that he had rescinded the mortgage under truth and lending fails for all the same reasons. There's no evidence that, that he, there's no evidence in the record that he presented that he released the mortgage. Moreover, the circumstantial evidence is that he paid the mortgage for over three years. You know, three years after he said he, he, he he rescinded it. And there's no evidence of rescinding in the, in the servicing records and no evidence that the proceeds of the loan were paid off. In the record is amply clear. The record is clear that there are no materials issues of material, there are no issues of material fact, which would preclude summary judgment. And we contend that the trial court did not air and granting it on the remaining issues, such as the jurisdiction of the trial court with respect to the renoticing of the motion to approve sale. Again, as we set forth in our brief, the, the, the re-noticing of that motion did not impact a jurisdiction because that motion was not a post-trial motion under 2-1203 was merely the re-noticing of the same motion. So it doesn't have any impact on the court's jurisdiction. And then for the question, whether or not the mandate from a, from Mr. The mandate from the denial, the dismissal of the of Mr. Bell's attempt to appeal the summary judgment motion did not deprive this court of jurisdiction because that appeal was that notice of appeal was from a non-final order, which effectively is was legally ineffective. So the trial court did have jurisdiction to hear the summary judgment and all the subsequent motions and Mr. Bell's contentions. Otherwise I think Mr. Bell's contention that he did not receive the pre the prefiling notice of foreclosure that's mandated by the mortgage. We contend it's waves. He's never raised that in the trial court. He's raised for the first time on appeal. And regardless of whether he raised it or not by not filing a verified answer, he admitted the allegation of the complaint that his failure to required were given his failure to deny that allegation is, is deemed an admission. Finally, Mr. Bell, Mr. Bell contends that the order approving the sale was improper because the court was obliged to hold a mini hearing of some sort again under 15, 1508, it's an abuse of discretion. It was well within the court's discretion, whether or not to hold a mini hearing or an evidentiary hearing on this. And in fact, the only case law where the courts have determined that evidentiary hearing is necessary or those cases where the mortgage or contends that the sales price was inadequate and supports that motion with evidence of the unconscionability of that sales price. And then the other case invoking equitable intentions where the mortgage or had interned into a loan modification agreement at the sale before the sale was approved, which the court contends under principles of equity, justify settings type of sale. None of those facts are present here. And none of those facts were argued in the trial court. So for the reasons, and then I would say the last point, the last point, Mr. Bell, I just want to inform you, you can, you can close, but you're the red thank you. Is that the leave to file the fourth amended complaint? Again, this is an abuse of discretion standard. There's no evidence in the record as to how, what the court deter, what the court, why the court denied that motion and the burdens on would be on Mr. Bell to show that there was an abuse of discretion, which he failed to do for those reasons. And we asked that the decisions of the trial court be affirmed. Thank you. Mr. Newton, any questions from the panel? None. And one referencing Bell one, which concluded, I think that contradictory factor, factual inferences could be taken from the one release of mortgage followed by the certification of error. How did the motions for summary judgment and, and Bell to address that perceived shortcoming? Yeah. So the, that's a good question. It's set forth in the, in the, in the, in the Crawford affidavit where the loan servicer, the current hold of the loan after review of the, all the bank, all of the servicing records determined that the a beta state, a vermin, an affirmative, a vermin of fact that the satisfaction was recorded in error and that the certification certificate of error that was recorded was a true and accurate copy of those documents. So I think whatever, whatever factual shortcomings were found in Bell one, I think I submitted were corrected by the Crawford affidavit and Bell too. And as you say, never contradicted by a counter affidavit. Correct. And then underscored by the line of cases, I don't remember the names of them, but some of them were quite old, but Supreme court cases that say that an errant recording of a release does not release the mortgage absent to showing that it had actually been satisfying. That's correct. Yeah. And there's the ballot, you know, the affidavit that there is, has not been satisfied. Thank you, sir. You've already answered or responded to my question. So thank you very much, Mr. Bell, you now have five minutes to respond to the attorney's arguments. Yes, sir. Initially, I'd like to say that there is Mr. Noonan mentioned that the affidavit, or there was no affidavit filed by me attached to my response to their motion for summary judgment. What is attached is a copy of my fourth amended answer and complaint, which is a verified document. Okay. I assert in my response, I asserted every fact that was included in that fourth amended complaint, which was attached to my motion. I'm sorry, my response. I attached that with the defenses and the assertions that I had, which all responded to the claims that plaintiff was making. That was a verified document, which had, in my estimation, had the same impact as any affidavit. It had the same impact on me in that if it was an assertion of annoying fact, annoyingly false facts, I could be punished for perjury. That is the point of an affidavit, to compel the affiant to tell the truth. That is what I did with that attached document, the fourth amended answer and affirmative defenses. Secondly, what is a part of this record is the August 15th, 2023 order of Judge Jars, who instructed both parties after he had denied their first motion for confirmation. He instructed both parties to re-notice their motion at the conclusion of the appeal. The appeal had not been concluded. No one, the court had not received a mandate from this court and did not receive one until January 30th of 2024. I am of the opinion that Rule 368 prohibited them from proceeding until they received that mandate. Apparently, Judge Jars was of the same opinion. As a matter of fact, during the October 17th, 2023 hearing, Judge Jars repeatedly stated that he did not have jurisdiction, but he put it very carefully. He did not have jurisdiction to hear my motion to vacate the September 5th order. He apparently was of the opinion that although he did not have jurisdiction to hear my motion, he had jurisdiction to deny it because that is what occurred. As it stood at that point, I never got a hearing regarding my motion to dismiss, which I know should have been a motion to strike the second filing of the motion to confirm. I did not get a hearing on the September 5th order from Judge Rickman. Thirdly, in reference to my not filing the counter-complaint against JPMorgan Acquisition, the clarity of what was occurring did not become apparent to me until I received discovery material in 2021, I believe it was. That was when I received a drop of over 700 documents that included, at that time, the altered mortgage agreement as well as a host of other documents. Lastly, in Bill 1, this court vacated the order of summary judgment and all the orders that followed that. Mr. Cole, the third-party purchaser at Bill 1, was returned all of his funds for that purchase. I never received the title to my property after that opinion. What that meant was, in reference to my posture to the property, I was still without title. Nevertheless, the foreclosure continued. I think A.B. Enamor v. McGann makes it clear that what you need in a foreclosure case is a defendant who has an interest in the property. After Rickman, I never received back, by way of any order from the circuit court, a title to the property. It seems to me as though the entire proceeding after Rickman was a sham. I apologize. Mr. Bell, your time is up. You can see us on your computer, can't you? Yes, sir. Let me put my video back on. I'm sorry. You can do that, because I don't think it helped us much. There was still a little lag there. Mr. Bell, I'm going to check and see if my colleagues have any questions for you. I have no questions, Justice Heddle. If I may, Mr. Bell, I note from your brief that you maintained, and your motions filed, that you and your now-deceased spouse cancelled the mortgage. Yes, sir. Do you still maintain that the mortgage was cancelled? Yes, sir. Is the email that you allege that that occurred of record? No, it is not. If I look at the closing statement, it would appear that this was a cash-out refinance. Your wife got cash as a result of it, correct? I'm sorry. I don't believe so. Well, that's what the closing statement says. I think the record demonstrates that you ended up paying a different servicer, did you not? I think the record shows from JPMorgan Chase that no payments were made between May of 2006 and whatever date in 2010 it is. There are no payments reflected in the records produced by— Well, they attached a ledger that demonstrated payments, sir, with an affidavit supporting it. So you had a mortgage. You say you cancelled one, but you didn't have to make any mortgage payments? No, no, no. No, I'm not saying that. My belief is that my wife continued to make the payments to Argent. Okay, thank you. No further. Mr. Bell, just a couple questions for me. You had made an accord and satisfaction argument previously in this case. Do you still maintain that? Yes, I do. And what was your accord? What did you give up? Okay, let me explain the basis of my assertion of accord and satisfaction. I am basing that on the satisfaction of mortgage. I am basing that also on 765 ILCS. I believe it's 935 slash 35, which states that the facts alleged in the satisfaction of mortgage are to be presumed as prima facie evidence of the facts contained in the satisfaction. That is what I'm basing it on. And did you— This is—I'm sorry, go on. Thank you, Mr. Bell. Did you add any additional evidence or did you rely on the satisfaction? I relied on the satisfaction. Just as a very practical matter, the mortgage payments were being made as an automatic deduction from my wife's bank account. We did not share bank accounts in that regard. That's the practicality of how that occurred. My last question, Mr. Bell, are you still living at the residence? No, I am not, sir. How long ago did you leave? Well, I didn't leave. I was evicted on February 11th of this year, 2025. February 11th? Are you asking— I was evicted by the sheriff. Are you asking that you be allowed back in the home? Yes, I am. Okay. So, February 11th of this year? Yes, sir. And did you ask for a stay of that eviction? Yes, I did. Did you ask for an appeal? I don't. I asked for a stay in the circuit court and during the course of this appeal after the appeal was docketed. I don't know if it was—I don't believe it was argued in my brief. No, I don't think so. Yeah. But I did file a written motion to stay before this court after the case was docketed. Thank you. Excuse me for drinking water. I don't know if that's— No, that's perfectly fine, Mr. Bell. I appreciate your professionalism and your argument, your respect to the court. I was drinking coffee a little bit earlier myself. To all the litigants here, thank you very much for your responsive—for your responses. I thought they were very direct and appropriate. We're going to take this case under review, and we will issue an opinion—excuse me, we will issue a decision in due course. Thank you very much. Crystal, we'll escort you out of the waiting room. Thank you. Thank you. Thank you. Thank you.  Thank you.      Thank you. Thank you.